IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.  CAUSE NO. 1:18cr6-LG-RHW

**JAMES DUGGER**

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

**BEFORE THE COURT** is the unopposed [39] Motion for Compassionate Release filed by the defendant, James Dugger. For the reasons stated below, the Motion is granted.

### BACKGROUND

On September 28, 2018, Dugger pled guilty to one count of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). He was sentenced to 48 months' imprisonment, 3 years of supervised release, and an assessment of $100. Dugger is currently incarcerated at FCI Oakdale I in Oakdale, Louisiana.

On May 22, 2020, Dugger filed the instant *pro se* Motion for Compassionate Release. In his Motion, Dugger claims that his poor health makes him particularly vulnerable to COVID-19. (Def.'s Mot., at 1, ECF No. 39); (Def.'s Reply, at 4, ECF No. 49). The record reflects that Dugger is an 80-year-old man who suffers from Type-II diabetes, hypertension, hyperlipidemia, chronic back pain, and a prior confirmed stroke. (*See* Medical Records (Ex. A), ECF No. 48); (*see also* Present. Invest. Rep ¶¶ 83-86, at 21, ECF 32). The stroke has affected his memory and speech, and his vision and hearing are poor. (*Id.* at ¶¶ 81-82, at 20-21). He further

-1-

states that he has trouble walking due to pain and fatigue.[1]  (*Id.* at ¶ 81, at 20).  Dugger also claims that he is the primary caregiver of his wife who is in poor health due to a stroke, his daughter who is paralyzed due to a car accident, and his 17-year-old grandson who has a bad heart.  (Def.'s Reply, at 5, ECF No. 49).  He argues that, in his unit at FCI Oakdale I, three inmates have been "moved to isolation with confirmed positive COVID-19 test results."  (Def.'s Mot., at 1, ECF No. 39).  He fears he will die in prison and contends that "time is of the essence" in his case.  (*Id.* at 1-2).

The Government does not oppose Dugger's release.  In fact, in its response, the Government confirms that "at the Oakdale Institution . . . there are 30 positive cases of COVID-19 and there have been seven deaths."  (Gov.'s Response, at 2, ECF No. 46).  The Government maintains that Dugger is a non-violent offender who has already served fifty percent of his sentence.  (*See* Gov.'s Response, at 2, ECF No. 46); (*see also* Present. Invest. Rep., ¶¶ 20-36, at 9-15, ECF No. 32).  As such, "[i]n light of the Defendant's age, health condition and the fact that he has already served fifty percent of his sentence, the Government acknowledges that this particular Defendant has shown 'extraordinary and compelling reasons' for his release and the Government does not object to the Court granting Defendant's motion."  (Gov.'s Response, at 2, ECF No. 46).

---

[1] The record reflects that Dugger has an extensive medical history and, in support of his Motion, submitted over 400 pages of medical records.  (*See* Present. Invest. Report, at ¶ 81, at 20, ECF No. 32); (s*ee also* Medical Records, Ex. A, ECF No. 48).

-2-

## DISCUSSION

### I. Ripeness of Dugger's Motion

A district court may reduce a defendant's term of imprisonment after (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Here, Dugger filed a request with the Warden on April 27, 2020. The Warden denied Dugger's request on June 10, 2020, more than 30 days from the receipt of Dugger's request. Thus, the Court may consider Dugger's Motion on the merits.

### II. Merits of Dugger's Motion

In his Motion, Dugger seeks "help in this matter" for the reasons previously stated. (Def.'s Mot. At 2, ECF No. 39). To the extent Dugger requests the Court modify his sentence to home confinement, the Court must note that it lacks the authority to order home confinement. *See* 18 U.S.C. § 3621(b); *see also United States v. Adcock*, No. 3:19-CR-00106, 2020 WL 2043811, at *3 (W.D. La. Apr. 28, 2020). To the extent Dugger seeks a sentence reduction, he is correct that a court can reduce a sentence "if it finds that extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)-(ii). The Court also must consider the factors set forth in 18 U.S.C. §

3553(a), to the extent they are applicable. *See* 18 U.S.C. § 3582(c)(1)(A). The applicable factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(1), (2)(A)-(D).

The Sentencing Commission has not issued a relevant policy statement since 18 U.S.C. § 3582(c)(1)(A) was amended to permit defendants to file motions for compassionate release.[2] Some courts continue to obtain guidance from the prior policy statement, U.S.S.G. § 1B1.13, while other courts have determined that they are no longer bound by the prior policy statement. *Compare United States v. York*, Nos. 3:11CR76, 3:12CR145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019), *with United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019). Regardless of whether the policy statement remains binding, it continues to provide helpful guidance for determining whether a defendant is entitled to compassionate release.

---

[2] Prior to enactment of the First Step Act, only the Bureau of Prisons could file motions for compassionate release.

The policy statement provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition, or is suffering from serious functional or cognitive impairment, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). It also provides that family circumstances may constitute an extraordinary or compelling reason by virtue of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children," or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* § 1B1.13 cmt. n.1(C)(i)-(ii).

The policy statement further provides that the defendant should not pose "a danger to the safety of any other person or to the community." *Id.* § 1B1.13(2). To determine whether a defendant poses a danger, courts consider the nature and circumstances of the offense charged and the weight of the evidence against the defendant, as well as the defendant's physical and mental condition, family ties, employment, criminal history, and drug and alcohol use history. 18 U.S.C. § 3142(g). The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release is also an important factor. *Id.*

Here, Dugger suffers from not only Type II diabetes, but other various ailments as well. His prior confirmed stroke has affected Dugger's memory and speech, and his vision and hearing are poor. Dugger is 80 years old and the FCI

Oakdale I facility where he is housed currently has 5 inmates and 8 staff members that have tested positive for COVID-19. *See COVID-19 Cases*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited August 5, 2020). In total, 185 inmates have tested positive for COVID-19 at FCI Oakdale I, with numbers presumably in flux depending on the spread of the virus. *Id.* There have been 7 inmate deaths reported. *Id.* The Centers for Disease Control and Prevention ("CDC") list people aged 65 years and older and people who suffer from Type II diabetes among the groups of people at higher risk for severe illness due to COVID-19. *Older Adults*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 16, 2020); *People of Any Age with Underlying Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Aug. 6, 2020). Further, courts have determined that a defendant's susceptibility to COVID-19 may provide extraordinary and compelling grounds for compassionate release where the defendant's health and living conditions render the defendant particularly vulnerable to COVID-19. *See, e.g.*, *United States v. Heitman*, 3:95-CR-0160(4)-G, 2020 WL 3163188, at *3-4 (N.D. Tex. June 12, 2020); *United States v. Muniz*, 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020).

Dugger's family circumstances also favor release.  In support of his Motion, Dugger claims he is the primary caregiver for his wife who is in poor health, as well as his daughter and 17-year-old grandson.  (Def.'s Reply, at 5, ECF No. 49).  Dugger submits to the Court that, if released, he will stay at home in the country with his wife where they will help take care of each other since she is in "failing health." (*See* Def's Add. Evidence, Ex. 4, ECF No. 51-4).

The Section 3553(a) sentencing factors also favor Dugger's release.  First, Dugger is unlikely to pose a threat to the community.  The record reflects that Dugger has also served fifty percent of his prison term.  Furthermore, Dugger appears to be a kind and contributing member of his community, which mitigates any concerns of recidivism.  (*See* Def.'s Reply, Ex. A, ECF 49-1).  The three-year term of supervised release originally imposed in this case remains in effect, further mitigating any concerns that he will pose a danger to the community.  Although the Court does not discount the crime of which Dugger was convicted, the Court notes that Dugger's offense was nonviolent.  (*See* Gov.'s Response, at 2, ECF 46).

In conclusion, and in light of Dugger's advanced age, medical vulnerability, the threat posed by COVID-19 at FCI Oakdale I, and his family circumstances, the Court finds that Dugger presents an "extraordinary and compelling" reason for release.

In accordance with the foregoing,

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [314] Motion for Compassionate Release filed by the defendant, James Dugger, is **GRANTED**.

**IT IS FURTHER ORDERED** that the remainder of James Dugger's sentence is modified to time served with all conditions of supervised release to remain in full effect.  This sentence will be stayed for twenty-one days to give the Bureau of Prisons time to implement it and to give the United States Probation Office time to evaluate Dugger's proposed residence.  Thus, the Bureau of Prisons is instructed to release Dugger on **Thursday, August 27, 2020**.  Dugger's counsel shall coordinate with the Bureau of Prisons to arrange transportation from the prison.  Within 72 hours of his release, Dugger shall telephone the United States Probation Office to check in, but need not report in person.  The Court further advises Dugger that any violation of the terms of supervised release will result in a revocation of his supervised release and a return to the Bureau of Prisons for the remainder of his sentence.  The Clerk shall provide a copy of this Order to the Bureau of Prisons and the Probation Office.

**SO ORDERED AND ADJUDGED** this the 10th day of August, 2020.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE